UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELODIE PARONI, Individually and on Behalf of the Estate of EUGENE PARONI<br><br>*Plaintiff*<br><br>vs.<br><br>ALSTOM SA, INDIVIDUALLY AND AS PARENT, ALTER EGO AND/OR SUCCESSOR-IN-INTEREST TO ALSTOM POWER UK LTD., ALSTOM POWER, INC., ABB ALSTOM POWER INDUSTRIAL TURBINES LTD., ABB ALSTOM POWER INDUSTRIAL TURBINE, INC., ALSTOM GAS TURBINES LTD., ALSTOM GAS TURBINES, INC., EUROPEAN GAS TURBINES LTD., EUROPEAN GAS TURBINES, INC., RUSTON GAS TURBINES LTD., AND/OR RUSTON GAS TURBINES, INC.,<br><br>*Defendant* | **Civil Action No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

ELODIE PARONI, on behalf of the estate of Eugene Paroni, Decedent, brings this action for negligence, wrongful death, strict liability, and loss of consortium against Defendant Alstom SA ("Alstom"), and alleges as follows:

### I.   NATURE OF THE ACTION

1. This action is rooted in the belief that a corporation that manufactures and sells a product that causes severe harm when used, cleaned, maintained, and/or repaired as intended, should bear the cost of abating that harm. In this case the Decedent, Eugene Paroni, suffered the ultimate harm when he passed away from mesothelioma on April 19, 2017. Mr. Paroni's

mesothelioma was caused by intermittent asbestos exposure throughout his life. As it relates to Defendant Alstom, Mr. Paroni was exposed to asbestos during his employment as a welder for Combustion Power Company in Menlo Park, California between 1970 and 1972. More specifically, Mr. Paroni was exposed to asbestos from a Ruston TA-1500 turbine present on site at Combustion Power Company.

2. The manufacturer of the Ruston TA-1500 turbine was an English company named Ruston Gas Turbines, Limited ("Ruston"). Ruston contracted with customers in California to install, repair, and/or service its turbines in the State of California. Mr. Paroni recalled outside workers taking apart and working on specialized turbine equipment, including asbestos blankets.

3. On information and belief, Alstom is the successor in interest to Ruston. At some point in time after Mr. Paroni's exposure, Alstom acquired Ruston, including its asbestos liabilities.

4. Alstom's history in the United States dates back more than 160 years.[1] It employs 2200 employees across 15 locations in the United States, and its United States Headquarters is located at 641 Lexington Avenue, 28th Floor, New York, New York 10022.[2]

5. Plaintiff originally brought suit against Alstom in Plaintiff and Decedent's home State of California. Alstom successfully moved to quash, asserting its ties to the State were so minimal as to render the exercise of personal jurisdiction over it unconstitutional. Alstom did not deny it purchased Ruston or its liabilities.

---

[1] https://www.alstom.com/alstom-us
[2] *Id.*

## II.     PARTIES

6. Plaintiff, Elodie Paroni, is an individual residing in Santa Clara County, California. She Decedent's spouse and the personal representative of his estate.

7. Defendant Alstom SA is a foreign corporation incorporated in France. It's principal place of business is in Saint-Ouen, France. Alstom has had a United States presence for 160 years and maintains its United States headquarters at 641 Lexington Avenue, 28th Floor, New York, NY. There is no indication that Alstom is operating in the United States as a different corporation or entity.

## III.     JURISDICTION AND VENUE

8. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of California for purposes of diversity jurisdiction and Defendant is a citizen of France. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Alstom, because (1) Alstom is the successor in interest to Ruston Gas Turbines, Limited, the manufacturer of the turbine at issue, and (2) Alstom maintains its United States headquarters in New York and conducts significant business in New York, such that requiring an appearance does not offend traditional notions of fair play and substantial justice. According to Alstom's website, the company has one Board of Directors with members hailing

from France, America,[3] Germany, and Canada.  On information and belief, members of its Management Team reside in New York.[4]

10.     Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendant resides in and transacts business within this judicial district.

### IV.     FACTUAL ALLEGATIONS

11.     Mr. Paroni was diagnosed with pleural mesothelioma on or around March 14, 2016.  Mesothelioma is a particular type of disease that necessarily implicates an individual's past, cumulative exposure to asbestos.  These exposures, after a significant latency period, combine to form one indivisible injury.  Mr. Paroni, like most mesothelioma victims, was exposed to various forms of asbestos via various products that were manufactured, sold, and/or otherwise produced by a multitude of defendants in various locations.

12.     Mr. Paroni developed mesothelioma as a result of his occupational exposure to asbestos while employed as (1) a welder for Combustion Power Company in Menlo Park, California between 1970 and 1972; (2) as an HVAC mechanic for J. Lohr Vineyards & Wines and J&J Air Conditioning during the 1980s; and (3) performing automotive repair work in the 1960s.  Mr. Paroni succumbed to mesothelioma on April 19, 2017.  He left behind his wife and Plaintiff, Elodie Paroni, and two sons, Micah and Jamin.

13.     At issue here is Mr. Paroni's exposure to asbestos while employed as a welder for Combustion Power Company in Menlo Park, California between 1970 and 1972.  Mr. Paroni

---

[3] Alstom's American board member, Candace K. Beinecke lives in New York City and also serves on the Nomination and Remuneration Committee.
[4] On information and belief, Senior Vice-President of Alstom in the United States resides in New York.

worked at the Combustion Power Unit 400 Pilot Plant which was powered by a Ruston TA-1500 turbine.

14. The Ruston TA-1500 turbine was manufactured by a company no longer in existence, Ruston Gas Turbines, Limited. Defendant Alstom is the successor in interest to Ruston.

## COUNT I
## NEGLIGENCE and GROSS NEGLIGENCE

15. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

16. At all times herein mentioned, Defendant, through its predecessor in interest, engaged in the business of designing, manufacturing, assembling, packaging, modifying, selling, supplying, distributing, marketing, advertising, warranting, handling, disturbing, servicing, repairing, installing, removing and/or contracting to install, service, repair or otherwise maintain the Ruston TA-1500 turbine at issue.

17. Defendant, through its predecessor in interest, designed, manufactured, sold, supplied, distributed, marketed, advertised and/or warranted a finished product – namely, the Ruston TA-1500 turbine - which incorporated asbestos and asbestos parts and materials therein by design, and which were designed to be used with asbestos and other products and materials containing asbestos. The aforementioned turbine was designed and manufactured in such a manner that the ordinary use, operation, repair, maintenance, installation and/or removal of said product resulted in the release of respirable asbestos fiber such that persons, including Decedent Eugene Paroni, that worked with and/or around such product, as well as persons who came into contact with such persons, were exposed to and inhaled asbestos fiber.

18. Moreover, Defendant, through its predecessor in interest, designed, manufactured, sold, supplied, distributed, marketed, advertised and labeled the turbine at issue, which was defective, in that their ordinary foreseeable use, operation, installation, repair and/or removal caused the degradation of integrated asbestos-containing materials parts and components which were incorporated therein by design, both as original equipment and replacement parts. As a result of such degradation, the asbestos materials contained in said finished products became friable and released airborne, respirable asbestos that users, consumers, workers, bystanders, and others including said exposure substantially contributed to, and caused Decedent's injuries alleged herein, including his development of malignant mesothelioma.

19. It was foreseeable to Defendant that the original asbestos and other asbestos-containing materials, parts and components incorporated into and/or added to the Ruston TA-1500 turbine, would from time to time, be removed and replaced with new asbestos-containing materials and components as the result of the ordinary and foreseeable operation, use, maintenance and repair of the turbine and that the ordinary operation and use of each of the turbine would affect and degrade both the original asbestos-containing materials parts and components, as well as the replacement asbestos-containing materials parts and components by making them brittle, friable and not reusable. It was foreseeable to the Defendant that the process of removing the asbestos materials and components incorporated into their product and replacing them with new asbestos materials during ordinary repair and maintenance would further disturb the degraded asbestos-containing materials parts and components contained therein and result in the release of asbestos fibers into the air thereby causing exposure to and inhalation of asbestos fibers by users, consumers, workers, bystanders and others including Decedent.

20. Decedent Eugene Paroni was a worker, consumer and bystander who used, handled, serviced, repaired, disturbed, installed and/or removed, and/or was around others who used, handled, serviced, repaired, disturbed, installed and/or removed the asbestos and/or asbestos-containing products, as well as the finished products whose defective design and manufacture caused the release of asbestos referred to herein, and Decedent was exposed to asbestos in a manner that was reasonably foreseeable to Defendant.

21. Upon information and belief, and at all times herein mentioned, Defendant, through its predecessor in interest, failed to adequately warn purchasers, consumers, end users, and others – including Decedent - who would foreseeably come into contact with or otherwise be exposed to asbestos from their asbestos and defective asbestos-containing and/or asbestos-releasing products about the severe hazards posed by exposure to asbestos and asbestos-containing and asbestos-releasing products, including but not limited to lung damage and increased risk of lung cancer and malignant mesothelioma. At all times herein mentioned, Defendant had constructive and actual knowledge of the aforementioned hazards and risks to human health posed by their products and conduct.

22. Upon information and belief, Defendant failed to provide adequate warning to Decedent or to similarly situated users, consumers, workers and bystanders of the risks inherent in the replacement of asbestos containing materials, parts and components from Defendant's finished products and failed to warn Decedent, other workers, and bystanders that their finished product was designed and manufactured in such a way that the asbestos-containing materials, parts and components incorporated therein would be made friable and release asbestos fiber.

23. Upon information and belief, at the time of his exposure to asbestos, Decedent Eugene Paroni was not aware that exposure to asbestos presented any risk of injury and/or

disease to him and had not been advised or informed by anyone that he could contract any disease, sickness or injury as a result of working with or around asbestos and/or products which contained and/or incorporated asbestos.

24. As a direct and proximate result of the conduct of Defendant, the exposure to asbestos caused Decedent Eugene Paroni to contract mesothelioma, a fatal form of cancer only caused by exposure to asbestos, from which he died on April 19, 2017.

25. Plaintiff is informed and believes, and thereon alleges, that mesothelioma is a progressive, terminal and latent form of cancer caused by inhalation of asbestos fibers.

26. As a direct and proximate result of Defendant's conduct, Decedent's heirs sustained pecuniary loss resulting from the loss of love, comfort, society, attention, services and support of Decedent.

27. As a further direct and proximate result of Defendant's conduct, Plaintiff has and will incur loss of income, wages, pension, profits and commissions, a diminished earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff.  Leave is requested to amend this Complaint to conform to proof at the time of trial.

28. In researching, testing, manufacturing, distributing, labeling, and marketing the turbine at issue, Defendant, through its predecessor in interest, did so with conscious disregard for the safety of the users of said products, had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to mesothelioma.  Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendant had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendant, and which knowledge was obtained by said Defendant on or before 1933, and thereafter.

29. On or before 1933, and thereafter, Defendant was aware that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury or death, and Defendant knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

30. With said knowledge, Defendant, through its predecessor in interest, opted to manufacture and distribute said asbestos and asbestos products without attempting to protect users from or warn users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products.  Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, the Defendant intentionally failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.

31. The above referenced conduct was motivated by the financial interest of Defendant in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products.  In pursuit of said financial motivation, the Defendant consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury or death to workers and users thereof, and persons exposed thereto, including Decedent Eugene Paroni.

32. The above referenced conduct was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of workers exposed to asbestos and asbestos products, including Decedent Eugene Paroni. For the sake of example, and by way of punishing Defendant, Plaintiff seeks punitive damages according to proof.

## COUNT II
### WRONGFUL DEATH and EXEMPLARY DAMAGES

33. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

34. As a direct and proximate result of the willful, reckless and/or malicious acts of the Defendant, Eugene Paroni suffered an untimely death.

35. Plaintiff, Elodie Paroni, is the spouse of the Decedent, Eugene Paroni, and is the Representative for his Estate.

36. The aforesaid negligence proximately caused damages to the Estate of Eugene Paroni and the beneficiaries of the Estate of Eugene Paroni.

37. Plaintiff, Elodie Paroni, therefore seeks exemplary damages as a result of the Defendant's aforementioned actions and omissions which caused Mr. Paroni's wrongful death.

## COUNT III
### STRICT PRODUCT LIABILITY

38. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

39. Upon information and belief, Defendant, through its predecessor in interest, researched, designed manufactured, tested or failed to test, inspected or failed to inspect, labeled,

sold, distributed, advertised, marketed, and/or warranted a turbine containing asbestos and/or to be used with other asbestos parts and/or to which asbestos parts were to be added later as part of the design.

40. Asbestos and asbestos-containing products are defective, in that they are capable of causing and did, in fact, cause personal injuries, including mesothelioma and other bodily damage, to users, consumers, bystanders and others who were foreseeably exposed to asbestos from said asbestos and products containing asbestos, including Decedent Eugene Paroni, while said asbestos and products containing asbestos were used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use by consumers, users, bystanders and workers exposed thereto.

41. Defendant failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

42. Upon information and belief, and at all times herein mentioned, Defendant was aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing – e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing and replacing them with the new materials during ordinary maintenance operations would disturb the asbestos materials, releasing asbestos into the air.

43. Upon information and belief, Defendant failed to provide adequate warning to Decedent or to similarly situated users, consumers, workers and bystanders of the risks inherent in the replacement of asbestos containing materials, parts and components from Defendant's

finished products and failed to warn Decedent, other workers, and bystanders that their finished product was designed and manufactured in such a way that the asbestos-containing materials, parts and components incorporated therein would be made friable and release asbestos fiber.

44. Because the acts and/or omissions of Defendant were either committed by or authorized, ratified, or otherwise approved in a deliberate, cold, callous, malicious, intentional, and/or unreasonable manner, as fully set forth herein, causing injury and damages to Plaintiff, and were done with a conscious disregard of Decedent's rights and safety, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish or set an example of it.

## COUNT IV
## LOSS OF CONSORTIUM

45. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

46. As a direct and proximate result of the acts of Defendant as set forth and incorporated herein by reference, and the severe injuries caused thereby to Decedent Eugene Paroni as alleged in his Complaint, Plaintiff Elodie Paroni has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of her said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

47. Plaintiff Elodie Paroni, as a result of the foregoing described injuries to her said spouse, has been generally damaged.

**DEMAND FOR JURY TRIAL**

48.     Plaintiff demands a jury trial for all claims so triable.

**PRAYER**

49.     WHEREFORE, Plaintiff, Elodie Paroni, Individually and on Behalf of the Estate of Eugene Paroni, Decedent, respectfully prays for judgment against Defendant in an amount to be determined by the trier of fact for her losses as well as the Estate's losses, damages and harm, economic and noneconomic, for exemplary and statutory damages, and for all costs, attorneys' fees, expert witness fees, filing fees, pre- and post-judgment interest, and such other further relief as the Court may deem appropriate, just, and proper.

Respectfully submitted,

By: /s/ _____

William A. Levin
CA Bar No. 98592
Angela J. Nehmens
CA Bar No. 309433
Levin Simes Abrams LLP
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
wlevin@levinsimes.com
anehmens@levinsimes.com

*Attorneys for Plaintiff*